IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ALAN CHRISTOPHER REED, <br> VERNON REED, AND DARLENE REED <br><br> Plaintiffs, <br><br> vs. <br><br> A.E. HERNANDEZ, <br> THE CITY OF TEXAS CITY, <br> AND THE TEXAS CITY <br> POLICE DEPARTMENT, <br><br> Defendants. | § § § § § § § § § § § § § § § § | <br><br><br><br><br><br><br> 3.14-cv-294 <br><br><br> JURY TRIAL DEMANDED |

# Plaintiff's Original Complaint

ALAN CHRISTOPHER REED, DARLENE REED and VERNON REED file this original complaint, complaining of: (i) Officer A. E. Hernandez; (ii) the Texas City Police Department; and (iii) The City of Texas City as follows:

**Parties**

1. Alan Christopher Reed is an individual residing in Clay County, Missouri.
2. Darlene Reed is an individual residing in Clay County, Missouri.
3. Vernon Reed is an individual residing in Clay County, Missouri.
4. A. E. Hernandez is an individual who may be served at the Texas City Police Department headquarters, 1004 9th Ave N, Texas City, Texas 77590, or wherever he may be found. He is being sued in his individual and official capacities.
5. The Texas City Police Department is a department of the City of Texas City that may be served by delivery of citation to Robert J. Burby as its Chief of Police at the Texas City Police Department headquarters, 1004 9th Ave N, Texas City, Texas 77590.

6. The City of Texas City is an incorporated city in the State of Texas and may be served by delivery of citation to Matthew T. Doyle as its Mayor at City Hall, 928 5th Ave N, Texas City, Texas 77590.

### Jurisdiction and Venue

7. Defendants have systemic and continuous contacts with the Sate of Texas. Further, Defendants have purposefully directed their activities at Plaintiffs, resident of the State of Missouri, and this civil action results from damages that arise out of or relate to those activities. Therefore, this Court has "general jurisdiction" over Defendants for the claims raised in this civil action. In sum, this Court has personal jurisdiction over the parties in this civil action. This Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1367 and supplemental jurisdiction over claims made under the Texas Tort Claims Act. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) and (2).

### Facts
### A. Background

8. Alan Reed lives in Liberty, Missouri.
9. Alan and his parents, Darlene and Vernon, were on a two-day trip from Missouri to attend the funeral and family grieving events for Darlene Reed's first cousin.
10. Alan arrived on a later flight than his parents and met them at the Carnes Funeral Home on Thursday, September 13, 2012.
11. Alan and his parents rented separate cars.
12. The Reeds joined the family of the deceased at their home where many family members were in attendance.
13. Around 10:30 p.m., the various parties departed for the respective homes and hotels. Alan was to follow his parents to Candlewood Suites Hotel where they were saying because had not yet been there and relied on his parents to guide the way.

### B. The Attack on Alan C. Reed

14. On September 13, 2013 at approximately 10:30 p.m., Vernon Reed was attempting to drive back to the Candlewood Suites, with Alan following behind, but realized he took a wrong turn.

15. With no other traffic around, and Vernon realizing he was lost, Vernon slowed down for a stop in front of an AutoZone, about three or four inches from the curb to look at a map. Alan then followed suit and slowed to stop behind his father and mother.

16. Within a few seconds, a police vehicle with flashing lights pulls out from the parking lot across the street where there were four other police vehicles.

17. Vernon immediately proceeded to the nearest parking lot entry and off the street into the AutoZone parking lot. The first police vehicle cut off Alan by driving in front of him, so Alan advanced to the next parking lot, which was adjacent to where Vernon pulled in.

18. One police officer followed Vernon while the rest followed Alan.

19. A female officer approached Alan's car and asked for his driver's license, which he produced immediately. She also observed the car rental agreement in the front seat and asked for it, which Alan gave to her.

20. Alan had opened the window by rolling it down about a third of the way, which was sufficient for their conversations and the passage of documents requested.

21. The officer asked Alan to roll down the window all the way, to which Alan responded by asking "Am I being charged with anything?" or "Am I being arrested?"

22. Another police officer, A. E. Hernandez, joined the female officer and, ignoring the fact that she had asked for and been given documents she requested, she simply blurted out that "He won't roll down his window!"

23. Officer Hernandez ordered Alan to get out of the car. Alan obliged and was immediately pounced upon and roughly dragged to the back of the car

and the officer proceeded to pummel Alan, pulled him down, got on top of him with his knee in Alan's back and continued to beat him with his fists.

24. Another officer, who also held him down with his knee on Alan's head and beat him, joined Officer Hernandez.

25. Alan had made no effort to resist the officers, physically or verbally; but he was overpowered with the surprise attack.  There was no warning of the forceful police action and he was caught unprepared for it.

26. At this point, Darlene Reed witnessed the beating of her son and attempted to run to his aid.  Instead, she tripped on a curb and fell face first into the concrete.

27. Vernon Reed then ran up to the scene and pleaded with the officers to stop.

28. At tow truck pulled up to impound Alan's car and the officers informed Vernon that Alan has resisted arrest and was going to be arrested for obstruction of traffic.

29. The tow truck eventually towed away Alan's car and Darlene and Vernon followed the police vehicle, with Alan handcuffed and beaten in the backseat, to their station in an attempt to talk with someone about the abuse of process.

30. At approximately 11:15 p.m., the Reeds were invited to talk with a Sergeant who seemed to understand that the matter had escalated beyond reason and volunteered to talk with the Captain to get Alan released as soon as possible.  He returned a little later to tell them that the Captain had agreed Alan could be released as soon as he was processed in.

31. However, the Sergeant left after his shift with no resolution for the Reeds and without informing them he was leaving.

32. Around 1:30 a.m., the Reeds were able to speak to another Sergeant who informed them.  The replacement Sergeant told the Reeds that Alan was to be cited for the traffic violation and would be sent to the Galveston County Jail to be booked for resisting arrest and would require Alan to post bond to assure that he would return to Texas for a trial.  He told them that they would take him to Galveston at 3:30 a.m.

33. After the Reeds explained why they were in town for a limited amount of time, the Sergeant agreed to expedite this procedure and send Alan to Galveston as soon as he was booked, without waiting until the 3:30 a.m. schedule.

34. However, without any other detainees for the trip, they still waited until 3:30 a.m. to transfer Alan and since there was a shift change at 5:00 a.m. and it would be not until 6:30 a.m. before the new shift would come, it was likely Alan would be detained for a very long time.

35. It became evident that Alan was deliberately kept in Texas City longer than necessary, particularly to get him caught up in the 5:00 a.m. to 6:30 a.m. shift change delay.

36. Before being released, a female clerk or deputy asked Alan to sign a document, which he attempted to read. But she kept it in her hand and refused to allow him to read it.  In order to be released, Alan was compelled to sign it without reading it, and was not given a copy of it.

37. After Alan was released at 7:00 a.m., a witness approached the Reeds and expressed his indignation at this treatment of Alan, as he had witnessed the signing event without the benefit of reading the document, and was likewise appalled by it.

### C.  The Aftermath of the Attack

38. As a result of the brutal attacks, Alan Reed sustained multiple and severe injuries.

39. Darlene Reed sustained multiple and severe injuries as a result of a being a bystander to the attack.

40. All three Reed family members also have severe emotional trauma.

### First Cause of Action
### Assault

41. Plaintiffs adopt and reassert paragraphs 1 through 38 above as if fully set out herein.

42. By beating, manhandling, attempting to kill Alan Reed, Officer A. E. Hernandez committed assault again Plaintiffs.

43. As a result of the assault on Alan, Alan has suffered severe physical injury- namely; Officer A. E. Hernandez beat Alan Reed so severely resulting in multiple bruises all over his body as a result of the illegal use of force again him.  The bruises and beating cause him excruciating pain.

## Second Cause of Action
### Battery

44. Plaintiffs adopt and reassert paragraphs 1 through 38 above as if fully set out herein.

45. By beating, manhandling, attempting to kill Alan Reed, Officer A. E. Hernandez committed assault again Plaintiffs.

46. As a result of the battery on Alan, Alan has suffered severe physical injury- namely, Officer A. E. Hernandez beat Alan Reed so severely resulting in multiple bruises all over his body as a result of the illegal use of force again him.  The bruises and beating cause him excruciating pain.

## Third Cause of Action
### Bystander Injury

47.  Plaintiffs adopt and reassert paragraphs 1 through 38 above as if fully set out herein.

48. Darlene Reed had injuries that occurred when she fell face first on concrete trying to come to the aid of her son who was being beat by Officer A. E. Hernandez.  She watched her son retain the beatings of Officer Hernandez.  As one might expect when a mother watches her child beaten by a police officer, Darlene Reed has suffered severe emotional distress as a result.

49. Vernon Reed, Alan's father also witnessed the horrific beatings, causing him severe emotional distress.

### Fourth Cause of Action
### False Arrest/Illegal Detention/False Imprisonment

50. Plaintiffs adopt and reassert paragraphs 1 through 38 above as if fully set out herein.
51. The Plaintiff was illegal seized and detained by the Defendants.
52. The Defendants arrested, seized, and detained the Plaintiff in violation of clearly established law and constitutional protections.
53. The Defendants' detention of and assault upon the Plaintiff was improper police procedure.
54. Alan Reed did not commit any act or did any thing, which could reasonably justify his stop, seizure, detention, and imprisonment.

### Fifth Cause of Action
### Excessive Force in Violation of the Fourth Amendment

55. Plaintiffs adopt and reassert paragraphs 1 through 38 above as if fully set out herein.
56. The Defendants, acting under color of law and in concert with one another, unlawfully arrested, assaulted, used force against, seized, and detained the plaintiffs without probable cause, or reasonable suspicion that any violation or crime had been committed.  Those actions violate the Plaintiffs' rights to due process, to equal protection, give rise to Plaintiffs' claims pursuant to the Fourth Amendment applicable to the State's by the Fourteenth Amendment to the Constitution of the United States and 42. U.S.C. § 1983, and their counterparts in the Texas Constitution.
57. Nothing Alan Reed did posed an immediate threat to the safety of the Defendants or others.  The Plaintiff was not actively resisting arrest or attempting to evade arrest by flight.  Officer Hernandez and the other officers' on the scene conduct was objectively unreasonable, resulted from their lack of training, and comported with Texas City's illegal de facto policies.
58. Alan Reed presented no physical threat to Officer Hernandez, any other

      officers on the scene, or the public.

59. Officer Hernandez threw Alan Reed onto the ground and continued to severely beat him with his fists as other officers watched.

60. As a result, Alan Reed suffered injuries, which resulted directly and only from the use of force that was clearly excessive to the need (especially since there was no need at all), and the force used was objectively unreasonable.  The use of force violated clearly established law.

61. Having been assaulted and beaten, Alan Reed sustained multiple and severe injures.

62. Texas City and the Texas City Police Department failed to adequately train and failed to reprimand any of the officers, including Officer Hernandez.

## Sixth Cause of Action
### Negligence

63. Plaintiffs adopt and reassert paragraphs 1 through 38 above as if fully set out herein.

64. The City of Texas City negligently hired and retained Officer Hernandez inasmuch as he is not qualified to be a peace officer in Texas.

## Seventh Cause of Action
### Intentional Infliction of Emotional Distress

65. Plaintiffs adopt and reassert paragraphs 1 through 38 above as if fully set out herein.

66. Alan Reed's parents were not given any information on their son when he was unlawfully detained.  They waited for hours as officers gave them false hope on when their son would be released.

67. Alan was the released an excessive amount of time later causing severe emotional distress to Marlene and Vernon Reed.

68. Alan Reed has done nothing illegal and given the Texas City Police Department no reasonable suspicion to believe that he had.  Nevertheless, Alan was held hostage by the Texas City Police Department, only after

being severely beaten and sustaining multiple injuries from this beating. Alan has suffered severe and emotional distress as a result.

### Jury Trial Demanded

69. Plaintiffs demand trial by jury.

### Damages

68. Following trial, Plaintiffs request that they be awarded all actual, incidental, direct, consequential, economic, special, nominal, general, and emotional damages, costs of court, reasonable and necessary attorney's fees, and pre- and post-judgment interest. The Plaintiffs also seek punitive and exemplary damages against the Defendants.

### Conclusion

70. Alan Reed, Darlene Reed, and Vernon Reed respectfully request that the Court grant judgment for them against Officer A. E. Hernandez; the City of Texas City; and the Texas City Police Department for their damages, attorneys' fees, costs of court, pre- and post-judgment interest; and grant all other relief to which they may be justly entitled.

Respectfully submitted,

/s/ R. Clive Markland
R. Clive Markland
MARKLAND LAW FIRM
State Bar No. 24027475
5450 NW Central Drive, Suite 330
Houston, Texas 77092
(832) 651-5188
(832) 487-8030 (fax)
**ATTORNEY FOR DEFENDANT**